IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:      LANDAMERICA FINANCIAL      Case No. 08–35994–KRH
              GROUP, INC.      Chapter 11

          Debtor.

ROBERT HAGAN,
LORI NORTHCUTT and
JOHN RAY,

          Plaintiffs,

v.      Adv. Proc. No. 10–03168

LAWYERS TITLE INSURANCE CORPORATION,
COMMONWEALTH LAND TITLE COMPANY,
CHICAGO TITLE INSURANCE COMPANY,
FIDELITY NATIONAL FINANCIAL, INC., and
FIDELITY NATIONAL TITLE INSURANCE COMPANY,

          Defendants.

## MEMORANDUM OPINION

Before the Court is a Motion for Remand filed by plaintiffs Robert Hagan, Lori Northcutt, and John Ray (collectively the "Plaintiffs"). The Motion for Remand was opposed by the parties that filed the Notice of Removal, defendants Lawyers Title Insurance Corporation, Commonwealth Land Title Company, Chicago Title Insurance Company, Fidelity National Financial, Inc., and Fidelity National Title Insurance Company (collectively the "Defendants"). Hearing was held on December 21, 2010, at which counsel for Plaintiffs and counsel for Defendants presented argument (the "Hearing"). At the conclusion of the Hearing, the Court took the matter under advisement. Having now considered the filings and arguments of counsel,

1

the Court has this day entered an order abstaining from hearing this particular proceeding pursuant to 28 U.S.C. § 1334(c)(1) and transferring venue back to the United States Bankruptcy Court for the Central District of California pursuant to 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 7087 (the "Abstention Order").  This Memorandum Opinion sets forth the Court's reasoning for the entry of the Abstention Order.

## Procedural Posture

This action was removed by Defendants from the Superior Court of the State of California, County of Orange (the "California State Court") to the United States Bankruptcy Court for the Central District of California, Southern Division (the "California Bankruptcy Court") on May 26, 2010 pursuant to Federal Rule of Bankruptcy Procedure 9027.  On September 29, 2010, the California Bankruptcy Court granted Defendants' Amended Motion to Transfer Venue and transferred the removed action to the Chapter 11 case, *In re LandAmerica Financial Group, Inc.*, Case No. 08–35994–KRH, pending in the United States Bankruptcy Court for the Eastern District of Virginia (this "Court").  Having transferred venue of the removed action to this Court, the California Bankruptcy Court abstained from hearing and from ruling on the Defendants' Motion to Dismiss Plaintiffs' Amended Complaint or the Plaintiffs' Motion to Remand.  Plaintiffs filed the present Motion to Remand in this Court on December 1, 2010.

## Factual Background

On November 26, 2008 (the Petition Date), LandAmerica Financial Group, Inc. ("LandAmerica") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "LandAmerica Bankruptcy Case").[1]

---

[1] On the same date, LandAmerica's wholly owned subsidiary, LandAmerica 1031 Exchange Services, Inc., also filed a chapter 11 petition in this Court.

Two series of events associated with the LandAmerica Bankruptcy Case eventually led to the removed action currently before the Court.

First, just three days before the Petition Date, the officers of LandAmerica terminated the company's Severance Plan for employees terminated on or after November 23, 2008. At a subsequent meeting of the LandAmerica Board of Directors on December 10, 2008, the board unanimously approved a resolution ratifying the actions of the officers, officially terminating the company's Severance Plan.[2]

Second, on November 25, 2008, LandAmerica entered into a Stock Purchase Agreement (the "SPA") with Chicago Title Insurance Company, Fidelity National Financial, Inc., and Fidelity National Title Insurance Company (together "Fidelity") to sell certain assets owned by LandAmerica. Among the assets included in the SPA was the capital stock of Lawyers Title Insurance Corporation ("Lawyers Title") and Commonwealth Land Title Company ("Commonwealth Title"). Lawyers Title and Commonwealth Title were wholly owned underwriting subsidiaries through which LandAmerica issued title insurance policies.[3]

On November 26, 2008 and concurrent with its bankruptcy petition, LandAmerica filed a motion seeking an order, pursuant to § 363 of the Bankruptcy Code, approving the SPA (the "Motion to Approve the SPA"). Hearing was held on December 16, 2008 regarding the Motion to Approve the SPA. Following the hearing, the Court entered an Order on December 17, 2008: (A) Approving the Sale of LandAmerica Financial Group, Inc.'s Stock in Certain Underwriting Subsidiaries and Other Assets; (B) Approving Related Stock Purchase Agreement; (C)

---

[2] The last director absent from the meeting executed his consent to the resolution on December 12, 2008.

[3] LandAmerica also held a third underwriting subsidiary, United Capital Title Insurance Company, the stock of which was also part of the SPA.

Approving Form and Manner of Notice Thereof; and (D) Granting Related Relief (the "Sale Order").

Each of the named Plaintiffs was employed by one of the underwriting subsidiaries whose stock was sold in accordance with the SPA as approved by this Court in the Sale Order.[4] Each of the named Plaintiffs had his or her employment terminated between 2008 and 2009 and has not been paid severance benefits.[5]

On April 2, 2010, Plaintiffs filed a complaint in the California State Court (the "Original Complaint"). The Original Complaint, styled as a class action, asserts four causes of action against the Defendants seeking severance benefits on behalf of individuals who were or are employed in California by Lawyers Title and/or Commonwealth Title. On May 26, 2010, Defendants removed the Original Complaint to the California Bankruptcy Court.[6]

After Defendants filed their motions to Transfer Venue and to dismiss Plaintiffs' Complaint in the California Bankruptcy Court, Plaintiffs, on June 22, 2010, filed their First Amended Class Action Complaint (the "Amended Complaint").[7] Defendants then filed the

---

[4] Plaintiffs' Motion for Remand alleges that plaintiff John Ray became employed by Commonwealth Title in 1989 and became employed by Lawyers Title when the latter acquired Commonwealth Title in 1996, that plaintiff Lori Northcutt became employed by Commonwealth Title in 1984 and continued with the company after its acquisition by Chicago Title, and that plaintiff Robert Hagan became employed by Commonwealth Title in 1987 and then began working for Lawyers Title in 2004.

[5] Plaintiffs' Motion for Remand alleges that plaintiff John Ray's employment was terminated in December 2008, plaintiff Lori Northcutt's employment was terminated in November 2009, and plaintiff Robert Hagan's employment was terminated in July 2009.

[6] Plaintiffs served the Original Complaint and accompanying summons on the Defendants on April 26, 2010. The LandAmerica Bankruptcy Case had been pending since November 26, 2008. According to Fed. R. Bankr. Proc. 9027(a)(3), when a civil action such as this one is initiated after the commencement of a bankruptcy case such as that of LandAmerica, the notice of removal must be filed with the clerk "within the shorter of (A) 30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed or (B) 30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons." As Defendants filed their Notice of Removal on May 26, 2010, there is no question that the notice was filed timely.

[7] Plaintiffs amended the Original Complaint to dismiss defendants Chicago Title Insurance Company, Fidelity National Financial, Inc., and Fidelity National Title Insurance Company.

4

Amended Motion to Transfer Venue which was subsequently granted by the California Bankruptcy Court.

## Analysis

Plaintiffs argue in their Motion to Remand that this Court must abstain from hearing the removed action pursuant to 28 U.S.C. § 1334(c)(2). In the alternative they argue that the Court should exercise its discretion to abstain under 28 U.S.C. § 1334(c)(1). Before analyzing the alternative bases for abstention, the Court must determine whether it has subject matter jurisdiction over these removed causes of action in the first place.[8]

I

Under 28 U.S.C. § 1334(b), district courts "have original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11."[9] A civil proceeding "arises under" the Bankruptcy Code when "federal [bankruptcy] law creates the cause of action or . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal [bankruptcy] law." *Sharif v. IndyMac Bank (In re Sharif)*, 411 B.R. 276, 280 (Bankr. E.D. Va. 2008) (citing *Poplar Run Five L.P.*, 192 B.R. at 854–55). A civil proceeding "arises in" a bankruptcy case when it is "not based on any right expressly created by [the Bankruptcy Code], but nevertheless would have no existence outside of the bankruptcy." *Bergstrom v. Dalkon Shield Claimants Trust (In re A. H. Robins Co., Inc.)*, 86 F.3d 364, 372 (4th Cir. 1996), *cert. denied*, 519 U.S. 993 (1996). A civil proceeding is "related to" a bankruptcy case "if the outcome could alter the debtor's rights, liabilities, options, or freedoms

---

[8] Bankruptcy courts, as courts of limited jurisdiction, must always be mindful of remaining within the bounds of their jurisdictional authority. *See Poplar Run Five L.P. v. Va. Elec. & Power Co. (In re Poplar Run Five L.P.)*, 192 B.R. 848, 854–55 (Bankr. E.D. Va. 1995).

[9] Emphases added. The General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984, similar to orders in other districts, refers all such cases to the district's Bankruptcy Court when venue is not directly transferred.

5

of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). The Fourth Circuit has held that "related to" jurisdiction is to be "broadly interpreted." *In re Johnson*, 960 F.2d 396, 403 (4th Cir. 1992).

Plaintiffs' causes of action in the Amended Complaint do not "arise under" the Bankruptcy Code nor do they "arise in" a bankruptcy case. The Amended Complaint includes breach of contract claims as well as alleged violations of the California Labor Code and the California Business and Professions Code. Such causes of action are certainly not created by federal bankruptcy law and they would have existence outside of a bankruptcy case.

The causes of action are, nevertheless, "related to" the pending LandAmerica Bankruptcy Case. The claims that Plaintiffs are asserting against Defendants arise out of the LandAmerica Severance Plan. Plaintiffs are present or former employees of Lawyers Title and/or Commonwealth Title which were wholly owned subsidiaries of LandAmerica that were sold to Fidelity pursuant to the SPA. The Sale Order entered by this Court on December 17, 2008 in the LandAmerica Bankruptcy Case authorized and approved that sale pursuant to 11 U.S.C. § 363. Although the LandAmerica Severance Plan was terminated pursuant to its terms no later than December 12, 2008, the LandAmerica Severance Plan was specifically excluded from the list of company benefit plans assumed by Fidelity. Furthermore, the SPA provided that neither Commonwealth Title nor Lawyers Title would have any liability or obligation for any company benefit plan that Fidelity did not assume. Defendants argue that this Court's Sale Order should control the outcome of the removed action. As the LandAmerica Severance Plan was not an assumed liability of Fidelity, Defendants maintain that any liability thereunder remained with the

Debtor, LandAmerica.[10] This Court clearly retained jurisdiction to interpret, implement, and enforce the terms and provisions of the Sale Order. Accordingly, the Court has "related to" subject matter jurisdiction over the removed action. *Smith v. McLeskey (In re Bay Vista of Va., Inc.)* 394 B.R. 820, 839 n.15 (Bankr. E.D. Va. 2008) (The test for whether a bankruptcy court has jurisdiction over a matter "related to" a bankruptcy case is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." (quoting *Valley Historic Ltd. P'ship v. Bank of N.Y.,* 486 F.3d 831, 836 (4th Cir. 2007))); *see In re Johnson*, 960 F.2d 396, 403 (4th Cir. 1992) ("Although there may be situations in which 'an extremely tenuous connection to the estate' would not justify the existence of jurisdiction, 'related to' jurisdiction is to be broadly interpreted." (quoting *Collier on Bankruptcy (MB)* para. 3.01 at 3–28 (15th ed. 1989) (quoting *In re Salem Mortg. Co.*, 783 F.2d 626 (6th Cir. 1986) and citing *In re So. Indus. Banking Corp.*, 809 F.2d 329 (6th Cir. 1987)))).

II

A determination that this Court has "related to" jurisdiction over the Plaintiffs' Amended Complaint is not dispositive, however. A bankruptcy court may still be required to abstain from hearing such a proceeding under 28 U.S.C. § 1334(c)(2) or it may exercise its discretion to abstain from hearing the proceeding under 28 U.S.C. § 1334(c)(1).

---

[10] It does not necessarily follow from Defendants' argument that the LandAmerica Severance Plan is not a liability of Commonwealth Title or of Lawyers Title. It is true that the SPA did not by its terms render Lawyers Title or Commonwealth Title liable for the non-assumed company benefit plans of LandAmerica. However, at the same time, the SPA did not discharge Lawyers Title or Commonwealth Title from any preexisting liability that they might have had independently under the plans. While § 363 of the Bankruptcy Code authorizes the sale of property free and clear of interests, it was not the property of Commonwealth Title or of Lawyers Title that was sold in the LandAmerica Bankruptcy Case. Rather, it was the stock that LandAmerica owned in those underwriting companies. The Court's approval of the SPA had no effect on the obligations or liabilities of the non-debtor subsidiaries of LandAmerica. *See Kreisler v. Goldberg,* 478 F.3d 209, 213–14 (4th Cir. 2007).

A

Mandatory abstention under 28 U.S.C. § 1334(c)(2) may be required for proceedings "related to a case under title 11 but not arising under title 11 or arising in a case under title 11." The Court must abstain when all of the following factors are present:

> (1) A party to the proceeding must file a timely motion to abstain; (2) The proceeding is based on a state law claim; (3) The proceeding is a "non-core, but related to" proceeding; (4) There is no basis for federal court jurisdiction other than Section 1334; (5) An action is commenced in state court; and (6) The state court action can be timely adjudicated.

*Seven Springs, Inc. v. Abramson (In re Seven Springs, Inc.)*, 148 B.R. 815, 817 (Bankr. E.D. Va. 1992). If the Court determines that any element of the test is not present, the Court must find that mandatory abstention would be improper. *In re First Va. Reinsurance, Ltd.*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004).

The parties have argued vociferously over the applicability of the fourth element: whether there exists a basis for federal court jurisdiction other than 28 U.S.C. § 1334. Both parties focused their arguments on the Employee Retirement Income Security Act (hereinafter "ERISA"). The parties question whether or not the alleged severance plans were by definition ERISA plans. The Court need not resolve that issue. The Defendants clearly raise ERISA preemption as an affirmative defense to the Plaintiffs' causes of action. The Defendants maintain that their response to the Amended Complaint creates an alternate basis for federal court jurisdiction. This raises the question whether the Defendants' responsive pleading can create the alternative basis for federal court jurisdiction under the fourth prong of the judicial test for 28 U.S.C. § 1334(c)(2) or whether that basis must appear from the allegations set forth in the Plaintiffs' Amended Complaint.

For over a century, the so-called "well-pleaded complaint rule" has stated that, in determining whether a claim arises under federal law, a Court must examine the "well-pleaded" allegations of the plaintiff's complaint and ignore defendant's potential defenses. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). As the Supreme Court stated in the preeminent case on the subject:

> [A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States.

*Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). If this case had been removed under the general removal statute, 28 U.S.C. § 1441, rather than under the bankruptcy removal statute, 28 U.S.C. § 1452, the well-pleaded complaint rule would certainly apply. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). However, the Supreme Court has not settled whether the well-pleaded complaint rule applies equally to limit removal under 28 U.S.C. § 1452.

While the case law on this subject is startlingly thin, this Court directly addressed the matter in *Bank of America, N.A. v. Brennan Title Company (In re Donoho)*. There, Judge Mitchell held that "the well-pleaded complaint rule does not apply in the context of bankruptcy removals, at least when removal is predicated on the bankruptcy court having 'related to' jurisdiction under 28 U.S.C. § 1334." *Bank of America, N.A. v. Brennan Title Co. (In re Donoho)*, 402 B.R. 687, 697 (Bankr. E.D. Va. 2009). The Court finds no reason to depart from Judge Mitchell's cogent arguments.[11]

---

[11] *See Bank of America*, 402 B.R. at 694–98 for a scholarly overview of the few reported decisions on the well-pleaded complaint rule's applicability to bankruptcy removals. As Judge Mitchell notes, the majority of these decisions hold that *Rivet* applies equally to bankruptcy removals. Only one case prior to *Donoho*, *Principal Life Ins. Co. and Petula Assocs., Ltd. v. JPMorgan Chase Bank, N.A. (In re Brooks Mays Music Co.)*, 363 B.R. 801 (Bankr.

9

As the Court in *Donoho* notes, when pleading a cause of action not invoking bankruptcy law, a plaintiff has "little or no occasion . . . to include allegations showing that the outcome 'could affect the debtor's rights, liabilities, options, or freedom of action' or would 'impact[] upon the handling and administration of the bankruptcy estate.'" *Id.* (quoting *Pacor, Inc.*, 743 F.2d at 994). Thus, applying the well-pleaded complaint rule as a bar to the removal of such actions would have two serious consequences. First, invoking the rule would "prevent a bankruptcy court from exercising . . . jurisdiction over a wide range of controversies that would otherwise fall within its original jurisdiction." *Id.* Second, and more practically, applying the rule would "subvert the general policy favoring the centralization of litigation concerning the debtor in the bankruptcy court." *Id.*

This Court holds that the well-pleaded complaint rule does not apply to bankruptcy removals predicated on "related to" jurisdiction, such as this one. Consequently, the ERISA preemption pled by Defendants as an affirmative defense can, and does, serve as an independent basis for federal jurisdiction apart from 28 U.S.C. § 1334.[12] Therefore, mandatory abstention is inappropriate, as the statute requires each of the elements of 28 U.S.C. § 1334(c)(2) to be satisfied; here they are not.

B

The inapplicability of mandatory abstention does not end the inquiry. Under 28 U.S.C. § 1334(c)(1), a court may consider permissive abstention. The statute states:

---

N.D. Tex. 2007), had found that the well-pleaded complaint rule does not apply in the context of bankruptcy removals.

[12] The preemptive force of ERISA is well documented, as it "establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990). This Court need not decide whether the particular severance plans in question are governed by ERISA; that the Defendants plead ERISA preemption as an affirmative defense is sufficient for bankruptcy removal purposes.

10

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). The bankruptcy court has considerable discretion when deciding whether to abstain from adjudicating a removed action. *Kepley Broscious, PLC v. Ahearn (In re Ahearn)*, 318 B.R. 638, 644 (Bankr. E.D. Va. 2003); *see also Smith v. McLeskey (In re Bay Vista of Va., Inc.)*, 394 B.R. 820, 845 (Bankr. E.D. Va. 2008). In *Ahearn*, Chief Judge Tice of this Court listed the factors a court should consider when determining whether to exercise permissive abstention:

> (1) The court's duty to resolve matters properly before it; (2) The predominance of state law issues and non-debtor parties; (3) The economical use of judicial resources; (4) The effect of remand on the administration of the bankruptcy estate; (5) The relatedness or remoteness of the action to the bankruptcy case; (6) Whether the case involves questions of state law better addressed by the state court; (7) Comity considerations; (8) Any prejudice to the involuntarily removed parties; (9) Forum non conveniens; (10) The possibility of inconsistent results; (11) Any expertise of the court where the action originated; and (12) The existence of a right to a jury trial.

*Ahearn*, 318 B.R. at 644 (quoting *Blanton v. IMN Fin. Corp.*, 260 B.R. 257, 265 (M.D.N.C. 2001)). Unlike the all-or-nothing analysis required for mandatory abstention, the Court is free to consider these factors as it deems appropriate in the full exercise of its discretion.

The Court has focused its attention on two of the *Ahearn* factors which, in this matter, outweigh all of the others. Not only do non-debtor parties predominate in the case; they are the *only* parties in the case. Although this Court certainly has specialized knowledge as to the LandAmerica Bankruptcy Case and more specifically as to the Sale Order, the Debtor is not a party to this proceeding.[13]

---

[13] Plaintiffs' Amended Complaint dropped the counter-parties to the SPA from their lawsuit. This left only the objects of that transaction, rather than any party to the SPA, as the sole remaining defendants in this case.

Case 10-03168-KRH    Doc 30    Filed 01/21/11    Entered 01/21/11 12:11:20    Desc Main
                    Document      Page 12 of 13

Second, and more importantly, the Court stresses that abstaining from this case and re-transferring venue—thereby permitting the California Bankruptcy Court, in its discretion, to either remand the action to state court or exercise the alternative basis of federal court jurisdiction—will have little effect on the administration of the bankruptcy estate of LandAmerica. Counsel for the Defendants made able arguments as to why the Court should not exercise its discretion in abstaining from this matter. Nevertheless, the only effects that the removed action could have on the administration of the Debtor's estate would be the possible substitution of one claim for that of another, an effect the established bar dates in the case would further mitigate.[14]

Simply put, the proceeding before the Court will have only a minimal effect upon the administration of the LandAmerica Bankruptcy Case. In determining whether to exercise its discretion in abstaining from adjudicating this matter, the absence of any meaningful impact on the handling and administration of the bankruptcy estate weighs heavily on the Court. After careful consideration, it is apparent that each of the other *Ahearn* factors falls into place simply because the outcome of the current proceeding will not materially affect the administration of the LandAmerica estate.

Therefore, the Court will exercise its discretion pursuant to 28 U.S.C. § 1334(c)(1) and, in the interests of justice and comity, abstain from hearing this particular removed proceeding.

## Conclusion

Based upon the pleadings and statements of counsel, the Court determines that it has subject matter jurisdiction over this proceeding and that mandatory abstention under 28 U.S.C.

---

[14] Defendants' argument that Plaintiffs are suing the wrong party because LandAmerica is the only party obligated under the LandAmerica Severance Plan and, therefore, Plaintiffs have no claim thereunder against Lawyers Title or Commonwealth Title does not mean that this Court must decide that issue. Furthermore, neither Lawyers Title nor Commonwealth Title has advanced third party claims against LandAmerica under Rule 7014 of the Federal Rules of Bankruptcy Procedure in connection with the removed action.

§ 1334(c)(2) is improper. Nevertheless, the Court has carefully chosen to exercise its discretion under 28 U.S.C. § 1334(c)(1) to abstain from hearing the removed action. Accordingly, the Court transfers venue back to the California Bankruptcy Court pursuant to 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 7087. As this case was removed to the California Bankruptcy Court, the question of equitable remand on whether the court ought to exercise the alternative basis for federal court jurisdiction is best left to the transferor court. A separate Abstention Order transferring venue to the United States Bankruptcy Court for the Central District of California shall issue.

Entered: _____

                                                     /s/ Kevin R. Huennekens
                                     UNITED STATES BANKRUPTCY JUDGE